**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

SARAH ANN BROWN,

Plaintiff,

v.

SYNEOS HEALTH US, INC., *et al*.,

Defendants.

Case No. 2:25-cv-01955-CV (AYPx)

**ORDER DENYING PLAINTIFF'S MOTION TO REMAND [DOC. # 12]**

On March 6, 2025, Defendant Syneos Health US, Inc. ("Defendant") removed the present action to this Court asserting diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. Doc. # 1 ("NOR") at 2. On April 7, 2025, Plaintiff Sarah Ann Brown ("Plaintiff") filed the instant Motion to Remand ("Motion"). Doc. # 12 ("Mot."). Defendant filed an Opposition on April 18, 2025. Doc. # 14 ("Opp'n").

The Court found the Motion suitable for decision without oral argument on May 5, 2025. Doc. # 17; *see also* Fed. R. Civ. P. 78(b); Local Rule 7-15; *Willis v. Pac. Mar. Ass'n*, 244 F.3d 675, 684 n.2 (9th Cir. 2001). Having reviewed and considered all the briefing filed with respect to the Motion, the Court DENIES the Motion and concludes as follows.

///

///

///

## I. INTRODUCTION

Plaintiff filed the present action on January 21, 2025, in the Superior Court of the State of California, County of Los Angeles, Case No. 25STCV01387. Doc. # 1-1, Ex. A ("Compl."). Plaintiff alleges that she worked for Defendant as a sales representative and later as a territory account manager. Compl. ¶ 12. During her time in the later position, Plaintiff alleges Defendant subjected her to discrimination, harassment, other employment-related harms, and ultimately wrongful constructive termination after she requested accommodations for non-work-related injuries. *Id.* ¶¶ 11–28.

Plaintiff consequently asserts eight causes of action: (1) disability discrimination in violation of the California Fair Employment and Housing Act ("FEHA"); (2) hostile work environment harassment in violation of FEHA; (3) failure to provide reasonable accommodation in violation of FEHA; (4) failure to engage in interactive process in violation of FEHA; (5) negligent hiring, supervision, and retention; (6) intentional infliction of emotional distress; (7) negligent infliction of emotional distress; and (8) wrongful constructive termination of employment. *Id.* ¶¶ 34–89. Plaintiff seeks general and special damages, exemplary damages, pre-judgment and post-judgment interest on all damages awarded, reasonable attorneys' fees, costs of suit incurred, declaratory relief, and any further relief the Court deems proper. *Id.* at Prayer. The Complaint does not assert a specific dollar amount in damages. *See id.*

## II. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction. They possess only that power authorized by Constitution and statute . . . It is to be presumed that a cause lies outside this limited jurisdiction . . . and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation modified).

A defendant may remove a civil action from state court to federal court only if the federal court has original subject-matter jurisdiction. 28 U.S.C. § 1441(a). Subject-matter jurisdiction exists where the action is between "citizens of different States," and the amount

in controversy "exceeds the sum or value of $75,000, exclusive of interest or costs." 28 U.S.C. § 1332(a). Subject-matter jurisdiction under 28 U.S.C. § 1332(a) requires complete diversity—meaning that "each defendant must be a citizen of a different state from each plaintiff." *In re Digimarc Corp.*, 549 F.3d 1223, 1234 (9th Cir. 2008).

The burden of both pleading and proving diversity jurisdiction always falls on the party seeking to invoke the district court's diversity jurisdiction. *NewGen, LLC v. Safe Cig, LLC*, 840 F.3d 606, 613–14 (9th Cir. 2016). There is a "strong presumption against removal jurisdiction," and the Court must "resolve[] all ambiguity in favor of remand to state court." *Hunter v. Philip Morris USA*, 582 F.3d 1039, 1042 (9th Cir. 2009) (quoting *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992)); *see also Gaus*, 980 F.2d at 566 ("We strictly construe the removal statute against removal jurisdiction.").

## III. DISCUSSION

Plaintiff argues the Court must remand this action because the Parties lack complete diversity and because Defendant fails to establish that the amount in controversy exceeds $75,000. Mot. at 8–9, 17–18. In turn, Defendant argues it properly removed this case on the basis of diversity jurisdiction under 28 U.S.C. §§ 1332 and 1441. NOR at 2; Opp'n at 5–10. Defendant also argues the Court should deny the Motion because Plaintiff failed to meet and confer prior to filing her Motion as Local Rule 7-3 and this Court's Standing Order for Civil Cases require.[1] Opp'n at 5.

The Court finds that Defendant meets its burden to establish that the Parties are completely diverse and that the amount in controversy exceeds $75,000. Accordingly, the Court has diversity jurisdiction over this action and DENIES the Motion.

///

///

///

[1] The Court admonishes Plaintiff for failing to comply with Local Rule 7-3, and Section III.B of this Court's Standing Order; however, the Court will not deny the Motion on this basis alone.

**A. The Parties Are Completely Diverse.**

The Parties primarily dispute whether Defendant's principal place of business is in California or North Carolina. Mot. at 7; Opp'n at 2.[2] This dispute arises from the Parties' disagreement over which test to use to determine a corporation's principal place of business. Mot. at 10–13; Opp'n at 5–7. Plaintiff argues the Court should apply the "substantial predominance" test and find Defendant's principal place of business is located in California. Mot. at 10–13. Defendant, however, argues the Court should apply the "nerve center" test and find its principal place of business is located in North Carolina. NOR at 3–4; Opp'n at 5–7.

The Court agrees with Defendant and finds its principal place of business is located in North Carolina based on the nerve center test.

1. <u>The Court Applies the Nerve Center Test.</u>

Plaintiff argues that the Court should apply the substantial predominance test. Mot. at 10–12. Defendant, however, argues that the substantial predominance test is invalid and that the nerve center test must be applied. Opp'n at 5–7. The Court agrees with Defendant.

The Supreme Court definitively held that the nerve center test is the exclusive test used to determine a corporation's principal place of business. *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). To be sure, the Ninth Circuit later confirmed that "[t]he Supreme Court chose the nerve center test over the various competing tests." *3123 SMB LLC v. Horn*, 880 F.3d 461, 469 (9th Cir. 2018) (explaining that prior to *Hertz*, different tests applied by circuit courts "lacked precision," while the nerve center approach simplified judicial determinations); *see also Hurd v. FedEx Off. & Print Servs., Inc.*, Case No 2:24-cv-02512-FMO (SSCx), 2024 WL 4893301, at *1 (C.D. Cal. Nov. 26, 2024) ("The substantial predominance test was rejected by the Supreme Court.").

---

[2] It is undisputed that Defendant is incorporated in, and therefore a citizen of, Delaware. Doc. # 14-2 ("Cantley Decl.") ¶ 3. It is also undisputed that Plaintiff resides and is domiciled in Orange County, California. Mot. at 9.

Here, Plaintiff relies on authorities that predate and directly conflict with the Supreme Court's decision in *Hertz*. Mot. at 10–11 (citing *Burgos v. United Airlines, Inc.*, Case No. 00-4717 WHA, 2002 WL 102607, at * 2. (N.D. Cal. 2002); *Ghaderi v. United Airlines, Inc.*, 136 F. Supp. 2d 1041 (N.D. Cal. 2001); *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495 (9th Cir. 2001)). And Defendant aptly points out that *Hertz* abrogated such authorities. Opp'n at 5–6. Accordingly, the Court must apply the nerve center test as directed by the Ninth Circuit and Supreme Court.

2. <u>The Court Finds Defendant's Principal Place of Business Is Located in North Carolina.</u>

Plaintiff argues that Defendant is a citizen of California because she claims California is Defendant's true center of business operations. Mot. at 12. Defendant argues that it is a citizen of North Carolina because it directs and controls its corporate activities from North Carolina. Opp'n at 6–7; NOR at 4. The Court agrees with Defendant.

Under the nerve center test, a corporation's principal place of business is where its corporate officers "direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92–93. A corporation's nerve center is usually its headquarters, provided that it is the "actual center of direction, control, and coordination." *Id.* at 93.

*First*, Plaintiff claims that Defendant maintains two large office complexes with "key departments" in California based on information from Defendant's public-facing website. Mot. at 12. Defendant, however, submitted an unrebutted declaration that states Defendant's corporate activities are "directed, controlled and coordinated from its headquarters in Morrisville, North Carolina." Cantley Decl. ¶ 3. And Plaintiff declines to elaborate on what "key departments" are in California or how the two California offices direct, control, or coordinate Defendant's business activities. Mot. at 12, 16–17.

*Second,* Plaintiff cites a Statement of Information Form filed with the California Secretary of State in 2019 on behalf of "Syneos Health Pharmaceuticals" as evidence that Defendant's "principal business office" is in Glendale, California, and that Defendant's CEO maintains an office at the same address. *Id.* at 132 ("Ex. 3"). But Defendant asserts

"Syneos Health Pharmaceuticals" is unrelated to Defendant, Defendant's parent company, or any other Syneos entity. Cantley Decl. ¶ 4.[3] Moreover, Defendant asserts the Glendale, California, address listed on the form "is not and has never been" an address associated with Defendant. *Id.* Plaintiff, in turn, fails to rebut Mr. Cantley's Declaration and declined to file a reply in support of her Motion. Consequently, it is undisputed that "Syneos Health Pharmaceuticals" is unrelated to Defendant.

Here, Defendant sufficiently alleges that its principal place of business is North Carolina. Defendant employs over 300 people, including the company's Chief Executive Officer, Chief Financial Officer, Chief Operating Officer, and Executive Chairman, at its Morrisville, North Carolina headquarters, and employs only eighteen people across its two California offices. Opp'n at 6–7; Cantley Decl. ¶¶ 5–6. Consequently, Defendant is a citizen of North Carolina and Delaware—not California.

Accordingly, Defendant meets its burden to establish the Parties are completely diverse.

**B. The Amount in Controversy Exceeds $75,000.**

Plaintiff seeks damages for a variety of economic harms, including lost past and future income, employment benefits, damage to her career, overtime, unpaid expenses, penalties, and interest on unpaid wages. Compl. ¶ 29. She also seeks damages for psychological and emotional distress, as well as punitive damages. *Id.* ¶¶ 30–31. However, Plaintiff argues that Defendant cannot prove that the amount in controversy exceeds $75,000 because her Complaint lacks an exact dollar amount. Mot. at 17–18. Defendant argues, based on the various damages Plaintiff seeks, the estimated amount in controversy easily exceeds $75,000. NOR at 5–6; Opp'n at 8–10. The Court agrees that the amount in controversy plausibly exceeds $75,000.

---

[3] Defendant's declaration clarifies that Defendant's CEO is Costa Panagos, and that Ana Babayan, the individual listed as the CEO of "Syneos Health Pharmaceuticals," is unaffiliated with Defendant and has never been Defendant's or any affiliated entity's employee.

The specific amount of damages a plaintiff pleads in good faith generally controls unless it appears to a legal certainty that the claim is for less than $75,000. *Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007). If it is "unclear or ambiguous from the face of a state-court complaint whether the requisite amount in controversy is pled," then the removing defendant must prove, by a preponderance of the evidence, that the amount in controversy exceeds $75,000. *Id.* Courts may consider the complaint, facts in the removal petition, and "summary-judgment-type evidence relevant to the amount in controversy at the time of removal." *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997) (citation modified). Defendants seeking removal need only plausibly allege that the amount in controversy exceeds $75,000. *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014). However, a defendant cannot establish removal jurisdiction through "mere speculation and conjecture, with unreasonable assumptions." *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1197 (9th Cir. 2015).

Here, Plaintiff does not allege a specific dollar amount but indicates the damages alleged exceed $35,000. Compl. at Prayer. Plaintiff contends the Complaint fails to indicate that the damages could plausibly exceed $75,000 and that Defendant fails to account for offsets which could potentially lower the amount in controversy below $75,000. Mot. at 17–18. By contrast, Defendant argues the Complaint meets the amount in controversy requirement based on Plaintiff's demand for compensatory damages, punitive damages, and attorneys' fees regardless of offsets. NOR at 5–6; Opp'n at 8–10. The Court agrees with Defendant and addresses each issue in turn.

1. <u>Lost Income</u>

Plaintiff does not dispute that lost income may be considered when determining the amount in controversy but asserts that the amount of lost income is insignificant in this case. Mot. at 18. Defendant argues that Plaintiff's lost income alone easily satisfies the amount in controversy requirement given her salary and time spent unemployed. Opp'n at

8–9. The Court agrees that the damages Plaintiff seeks for lost income plausibly exceed $75,000.

When a plaintiff alleges unlawful termination, courts often consider "the value of the wages plaintiffs may have earned after they were terminated" to evaluate "the amount of backpay placed in controversy." *Leon-Calderon v. Old Dominion Freight Line, Inc.*, Case No. 2:22-cv-08930-MCS (KSx), 2023 WL 1931328, at *2 (C.D. Cal. Feb. 10, 2023) (citation modified); *see also Walters v. Dollar Tree Distrib., Inc.*, Case No. 2:21-cv-02299-JAM-JDP, 2022 WL 1449187, at *2 (E.D. Cal. May 9, 2022) ("Defendant is justified in including lost wages in its amount-in-controversy calculations, because it is an available remedy for FEHA violations."). When economic damages alone satisfy the amount in controversy requirement, further consideration of non-economic damages is unnecessary. *See Hopper v. STS Distribs., Inc.*, Case No. 8:20-cv-02302-CJC (ADSx), 2021 WL 569026, at *1 (C.D. Cal. Feb. 16, 2021) (denying motion to remand where defendant's $78,000 calculation for plaintiff's potential lost wages was sufficient to establish amount in controversy without considering non-economic damages).

Here, Defendant submits an unrebutted declaration from an employee, a human resources manager familiar with Plaintiff's personnel records, stating that Plaintiff's annualized pay was $140,000. Doc. # 1-3 ("Snyder Decl.") ¶ 2. Based on this declaration, Defendant calculates Plaintiff's weekly, average pay to be $2,692. NOR at 5; Opp'n at 8. Consequently, Defendant asserts that Plaintiff's potential lost income is at least $199,208 based on Plaintiff's seventy-four weeks of unemployment as of February 27, 2025.[4] NOR at 5; Opp'n at 8–9. Plaintiff does not contest this specific figure, but instead argues Defendant's total estimated amount in controversy lacks factual support. Mot. at 17–18.

[4] Plaintiff fails to dispute this time estimate, which ranges from Plaintiff's alleged constructive termination on September 29, 2023, through February 27, 2025—one week before Defendant removed this action. Mot. at 17–18. The Court finds this time estimate reasonable. *See Beltran v. Procare Pharmacy, LLC*, No. 2:19-cv-08819 ODW (RAOx), 2020 WL 748643, at *3 (C.D. Cal. Feb. 14, 2020) (calculating past damages using date of termination through date of removal).

Plaintiff then argues that the amount of her lost income at stake is "small" but fails to factually support this assertion or provide her own estimation. *Id.* at 18.

Accordingly, the Court finds that the damages Plaintiff seeks for lost income in this case plausibly exceed $75,000.

2. Offsets

Plaintiff further argues that Defendant's claimed amount in controversy fails to account for various offsets, such as workers' compensation or potential reinstatement, that would reduce the amount in controversy. Mot. at 18. Defendant argues that Plaintiff fails to present any evidence establishing that she mitigated the alleged economic damages in this case, and that affirmative defenses, such as mitigation of damages, may not be factored into the amount in controversy. Opp'n at 9. The Court agrees that the offsets Plaintiff raises are irrelevant to the amount in controversy.

"[T]he amount in controversy reflects the *maximum* recovery the plaintiff could reasonably recover." *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 927 (9th Cir. 2019). Because the amount in controversy is simply "an estimate of the total amount in dispute, not a prospective assessment of defendant's liability," adjusting it based on the strength of any affirmative defenses is improper. *Lewis v. Verizon Commc'ns, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010); *see also Arias*, 936 F.3d at 928 (explaining that the strength of any given defense merely indicates the "likelihood of the plaintiff prevailing" and is irrelevant to the amount in controversy). Requiring a district court to evaluate every possible defense during an amount in controversy inquiry is impractical because doing so would effectively force the court to decide the merits of the case before determining whether it has subject-matter jurisdiction. *Geographic Expeditions, Inc. v. Estate of Lhotka ex rel. Lhotka*, 599 F.3d 1102, 1108 (9th Cir. 2010). Consequently, courts generally exclude affirmative defenses, counterclaims, and potential offsets from the amount in controversy calculation. *E.g., Garcia v. ACE Cash Express, Inc.*, Case No. 8:14-cv-00285-DOC, 2014 WL 2468344, at *3 (C.D. Cal. May 30, 2014).

Plaintiff's first argument is best understood as proposing that the amount in controversy should be reduced by the value of workers' compensation she receives (or has received). *See* Mot. at 18. However, Plaintiff provides no evidence detailing the existence, nature, or value of such workers' compensation. *Id.* Alternatively, Plaintiff contends that reinstatement of her employment, if she were to prevail, would eliminate any award of front pay and thus reduce the amount of recoverable damages. *Id.* Despite raising these arguments, Plaintiff fails to cite any relevant legal authority indicating that workers' compensation or potential reinstatement may be considered for purposes of reducing the amount in controversy. *Id*. Defendant correctly argues that Plaintiff's suggested offsets are best interpreted as mitigation of damages, which is as an affirmative defense. Opp'n at 9.

Because courts do not consider affirmative defenses when evaluating the amount in controversy, Plaintiff's argument that factoring in workers' compensation or potential reinstatement could lower the present amount in controversy below $75,000 is misplaced.

3. <u>Punitive Damages</u>

Plaintiff further argues that punitive damages should not be included in the Court's amount-in-controversy analysis because they are overly speculative. Mot. at 18. Defendant argues that punitive damages can be appropriately estimated and factored into the amount in controversy. Opp'n at 10. The Court agrees that punitive damages may be included in the amount in controversy.

The amount in controversy may account for punitive damages because it "includes all relief claimed at the time of removal to which the plaintiff would be entitled if she prevails." *Chavez v. JPMorgan Chase & Co.*, 888 F.3d 413, 416–18 (9th Cir. 2018). Calculating punitive damages at a 1:1 ratio of economic damages constitutes a "conservative" estimate in this circuit. *Guglielmino*, 506 F.3d at 698 (affirming district court's determination that amount in controversy requirement was satisfied where it included punitive damages calculated at a 1:1 ratio to economic damages); *see also Drewett v. Knott's Berry Farm, LLC*, Case No. 8:25-cv-1686-JWC-SSC, 2025 WL 2798651, at *4

(C.D. Cal. Sept. 30, 2025) (applying "a 1:1 ratio of compensatory damages to punitive damages" to evaluate the amount in controversy).

Here, Defendant estimates punitive damages using the more conservative, 1:1 ratio of economic damages. Opp'n at 10. Consequently, Defendant asserts punitive damages to be at least $199,208. *Id.* Setting aside that economic damages alone satisfy the amount in controversy requirement here, Plaintiff argues that "Punitive damages are a function of a damages award and are speculative at best." Mot. at 18. However, Plaintiff fails to cite any authority to support her single-sentence argument to exclude punitive damages from the amount in controversy calculation. *Id.*

The Court therefore finds that punitive damages may be included in the amount in controversy. Accordingly, the amount in controversy here far exceeds $75,000.

4. <u>Attorneys' Fees</u>

Plaintiff does not dispute that attorneys' fees may factor into the amount in controversy but instead appears to challenge whether the estimated fees are substantial enough to push the total amount in controversy above $75,000. Mot. at 18. Defendant argues that it appropriately estimates the fees Plaintiff seeks to recover, and that, such fees—alone—are likely to exceed $75,000 based on the fact that Plaintiff's counsel seeks "$8,550 solely for drafting this Motion." Opp'n at 9–10. The Court agrees with Defendant that attorneys' fees are appropriately included in the amount in controversy.

When attorneys' fees may be recovered under statute or contract, the court must include those future fees when determining if the amount-in-controversy requirement is satisfied. *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018). Attorneys' fees may be "conservative[ly]" estimated as 12.5% of potential economic damages. *Guglielmino*, 506 F.3d at 698 (affirming district court's determination that amount-in-controversy requirement was satisfied where it included attorneys' fees calculated at 12.5% of economic damages).

Here, Plaintiff seeks to recover costs and attorneys' fees pursuant to California Government Code section 12965(b) and California Code of Civil Procedure sections

1021.5 and 1032. Compl. ¶¶ 39, 47, 55, 63, 88. Plaintiff fails to provide an estimated amount of attorneys' fees and states that the total fees here will "not amount to thousands of dollars," despite the fact that Plaintiff's counsel seeks $8,550 solely for the present Motion. Mot. at 18. By contrast, Defendant contends that Plaintiff's counsel's future fees should be estimated using the conservative 12.5% standard the Ninth Circuit approved in *Guglielmino*. Opp'n at 9. Using this figure, Defendant calculates the fees at stake to be $24,901 ($199,208 in lost wages multiplied by 12.5%). Opp'n at 9; NOR at 5. When this figure is added to the estimated compensatory and punitive damages sought in this case, Defendant calculates the total amount in controversy here could be $423,317. NOR at 6.

The Court therefore finds that Defendant meets its burden to show, by a preponderance of the evidence, that Plaintiff's demand for compensatory damages, punitive damages, and attorney fees, easily exceeds $75,000.

## IV. CONCLUSION

For the reasons stated above, Plaintiff's Motion is DENIED.

**IT IS SO ORDERED**.

Dated: 7/14/26

Cynthia Valenzuela

HON. CYNTHIA VALENZUELA
UNITED STATES DISTRICT JUDGE